**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SECTRA COMMUNICATIONS AB,<br><br>Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, MCI COMMUNICATIONS SERVICES LLC D/B/A VERIZON BUSINESS SERVICES, AND VERIZON COMMUNICATIONS INC.<br><br>Defendants. | Civil Action No. 2:26-cv-00930<br><br>Jury Trial Demanded |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sectra Communications AB files this Complaint against Defendants Cellco Partnership d/b/a Verizon Wireless, MCI Communications Services LLC d/b/a Verizon Business Services, and Verizon Communications Inc. (collectively, "Defendants" or "Verizon") for infringement of U.S. Patent No. 7,797,437 (the "'437 patent" or the "asserted patent").

**THE PARTIES**

1. Plaintiff Sectra Communications AB ("Sectra") is a corporation organized and existing under the laws of Sweden, with its principal place of business at Teknikringen 20, SE-583 30 Linköping, Sweden. Sectra is a pioneer in the fields of medical technology and encrypted communication systems. Sectra develops cutting-edge solutions in the expanding niche segments of medical technology, IT, and cybersecurity.

2. Defendant Cellco Partnership d/b/a Verizon Wireless is a Delaware corporation with a principal place of business at One Verizon Way Basking Ridge, New Jersey 07920. Cellco

Partnership can be served with process through its registered agent, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19808.

3. Defendant MCI Communications Services LLC d/b/a Verizon Business Services LLC is a Delaware company with a principal place of business at 22001 Loudoun County Parkway, Ashburn, VA 20147. MCI Communications Services LLC can be served with process through its registered agent, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19808.

4. Defendant Verizon Communications Inc. is a Delaware corporation with a principal place of business at 1095 Avenue of the Americas, New York, New York 10036. Verizon Communications Inc. can be served with process through its registered agent, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19808.

5. Defendant Verizon Communications Inc. is the ultimate parent corporation, directly or indirectly, of Defendant Cellco Partnership and Defendant MCI Communications Services LLC.[1] On information and belief, Defendants act in concert and as agents of one another in furtherance of the infringing activities alleged herein, and Verizon Communications Inc. directs or controls the relevant activities of Cellco Partnership and MCI Communications Services LLC, including by inducing or contributing to the acts alleged herein.[2]

---

[1] *See* Verizon Communications Inc. Form 10-K, February 17, 2026, at Exhibit 21, https://www.sec.gov/Archives/edgar/data/732712/000073271226000007/a2025q410-kxexhibit21.htm (last accessed October 12, 2026) (listing Cellco Partnership and MCI Communications Services LLC as subsidiaries of Verizon Communications Inc.).

[2] *See Id.*; Verizon Communications Inc. Form 10-K, February 17, 2026 https://www.sec.gov/ix?doc=/Archives/edgar/data/0000732712/000073271226000007/vz-20251231.htm (last accessed October 12, 2026) (describing Verizon Communications Inc. as "a holding company that, acting through its subsidiaries, is one of the world's leading providers of communications, technology, information and streaming products and services to consumers,

6. Each Defendant operates as part of a unified Verizon enterprise, sharing common infrastructure, personnel, and operations within this District to provide communications, technology, and information products and services to consumers, businesses, and government entities throughout the State of Texas, including the Eastern District of Texas.[3] On information and belief, these coordinated activities are such that the regular and established places of business maintained and used by Defendants within this District are attributable to the Defendants, collectively. On information and belief, Verizon Communications Inc. further owns and controls, directly or indirectly, its U.S. subsidiaries, and the profits generated by the acts alleged herein ultimately flow to Verizon Communications Inc.[4] Accordingly, the acts of Cellco Partnership and MCI Communications Services LLC are attributable to Verizon Communications Inc., and the acts of the Defendants are attributable to one another, under principles of agency and/or alter ego. *See AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 U.S. Dist. LEXIS 194504, at *8 (E.D. Tex. Sep. 6, 2023) (citing *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232-33 (Fed. Cir. 2010)).

**JURISDICTION AND VENUE**

7. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.* This Court's jurisdiction over this action is proper under the above-referenced statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

---

businesses and government entities;" and describing Cellco Partnership as "wholly owned subsidiary" of Verizon Communications Inc.).

[3] *Id.*

[4] *Id.*

8. This Court has personal jurisdiction over Verizon because, among other things, Verizon does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this State, for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code § 17.042(3). For instance, Verizon has multiple job openings in Texas:[5]




[5] https://mycareer.verizon.com/jobs/?regions=Texas (last accessed October 12, 2026); https://www.linkedin.com/jobs/search-results/?currentJobId=4468263596&keywords=jobs&origin=JOB_SEARCH_PAGE_LOCATION_AUTOCOMPLETE&referralSearchId=MFSX3klBP8FSaWaQnagwrA%3D%3D&geoId=102748797&f_C=1103 (last accessed October 12, 2026).




9. Further, according to its LinkedIn account, Verizon employs over 1,132 people, including over 500 engineers and almost 300 IT professionals, in Richardson, Frisco, and Plano, Texas, all within this District:[6]

[6] https://www.linkedin.com/company/verizon/people/?facetGeoRegion=100517351%2C105918502%2C102164100 (last accessed October 12, 2026).




10. Further still, this Court has personal jurisdiction over Verizon because Verizon has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. Indeed, this Court has personal jurisdiction over Verizon because Verizon has committed acts giving rise to Sectra's claims for patent infringement within and directed to this

District, has derived substantial revenue from its products and services provided to individuals and entities in this State and this District, and maintains regular and established places of business in this District, including its numerous retails stores in this district, including those located at 741 N Central Expressway, Plano, Texas 75075; 2330 Preston Road, Suite 500, Frisco, Texas 75034; 190 E Stacy Rd, Allen, TX, 75002; 1006 E. End Blvd N, Marshall, TX, 75670; 500 E Loop 281, Longview, TX, 75605; 3904 St. Michael Dr., Texarkana, Texas 75503; 404 Walton, Texarkana, Texas 75501; 1016 W. Southwest Loop 323, Tyler, Texas 75701; 6874 S Broadway Ave., Tyler, Texas 75703; and 3816 HW 64 W, Tyler, Texas 75704.[7]

11. Additionally, Verizon provides cellular and wireless network services to customers throughout this District through numerous cellular towers and other wireless network infrastructure that Verizon owns, operates, leases, and/or controls within this District, including facilities located at: 8825 7th St, Frisco, TX 75034; and 6600 Hillcrest Rd, Frisco, TX 75035.[8]

---

[7] https://www.verizon.com/stores/ (last accessed October 12, 2026).
[8] https://www.verizon.com/coverage-map/ (last accessed October 12, 2026); https://agenda.friscotexas.gov/OnBaseAgendaOnline/Meetings/ViewMeeting?doctype=3&id=5424 (last accessed October 12, 2026); https://agenda.friscotexas.gov/OnBaseAgendaOnline/Meetings/ViewMeeting?doctype=1&id=4852 (last accessed October 12, 2026).




FRISCO

**MEETING OF CITY COUNCIL**

**FRISCO CITY HALL**

**GEORGE A. PUREFOY MUNICIPAL CENTER**

**COUNCIL CHAMBERS**

**6101 FRISCO SQUARE BLVD.**

**FRISCO, TEXAS 75034**

**5:00 PM**

**TUESDAY, JANUARY 6, 2026**

16. Consider and act upon authorizing the City Manager to execute the Second Amendment to a Tower Site Lease Agreement with Verizon Wireless for a tower site lease at 8825 7th Street. (Administrative Services/DF)

FRISCO

**MEETING OF CITY COUNCIL**
**FRISCO CITY HALL**
**GEORGE A. PUREFOY MUNICIPAL CENTER**
**COUNCIL CHAMBERS**
**6101 FRISCO SQUARE BLVD.**
**FRISCO, TEXAS 75034**

**5:00 PM**

**TUESDAY, APRIL 16, 2024**

**AGENDA**

13. Consider and act upon authorizing the City Manager to execute the First Amendment to a Tower Site Lease Agreement with Verizon Wireless for a tower site lease at 6600 Hillcrest Road. (Administrative Services/DF)

12. Further, according to the Collin County Central Appraisal District website, Verizon owns over 80 various locations and properties in Collin County, which is within this District.[9]

[9] https://esearch.collincad.org/ (last accessed October 12, 2026).


Collin CAD
Property Search
Homepage Interactive Map Taxpayer Portal Agent Portal Online Forms

Page 1 of 4 - Total: 80 (0.20 seconds)

Grid List

Customize View | Year: 2026 | Page Size: 25 | Download Results

1 2 3 4 — 1 - 25 of 80 items

| Property ID | Geo ID | Type | Owner Name | Owner ID | Situs Address | Legal Description | Appraised |
|---|---|---|---|---|---|---|---|
| 2150778 | | P | CELLCO PARTNERSHIP | 625731 | REFCO-VERIZON WIRELESS, TX | REFERENCE ONLY-VERIZON WIRELESS | $0 |
| 2683002 | P-9000-213-0078-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS SFC GCN JCN, TX | BPP AT VARIOUS LOCATIONS SFC GCN JCN; VARIOUS LOCATIONS SFC GCN JCN | $226,474 |
| 2683001 | P-9000-213-0077-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS SCO GCN JCN, TX | BPP AT VARIOUS LOCATIONS SCO GCN JCN; VARIOUS LOCATIONS SCO GCN JCN | $934,920 |
| 2683000 | P-9000-213-0076-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS SCL GCN JCN, TX | BPP AT VARIOUS LOCATIONS SCL GCN JCN; VARIOUS LOCATIONS SCL GCN JCN | $1,860,611 |
| 2682998 | P-9000-213-0074-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CWY SWY, TX | BPP AT VARIOUS LOCATIONS CWY SWY; VARIOUS LOCATIONS CWY SWY | $745,331 |
| 2682997 | P-9000-213-0073-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CRC SPL, TX | BPP AT VARIOUS LOCATIONS CRC SPL; VARIOUS LOCATIONS CRC SPL | $977,110 |
| 2682996 | P-9000-213-0072-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CPN SPN, TX | BPP AT VARIOUS LOCATIONS CPN SPN; VARIOUS LOCATIONS CPN SPN | $277,871 |
| 2682995 | P-9000-213-0071-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CPL SPL, TX | BPP AT VARIOUS LOCATIONS CPL SPL; VARIOUS LOCATIONS CPL SPL | $9,127,171 |
| 2682994 | P-9000-213-0070-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CPL SFR, TX | BPP AT VARIOUS LOCATIONS CPL SFR; VARIOUS LOCATIONS CPL SFR | $1,188,238 |
| 2682993 | P-9000-213-0069-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CMR SWY, TX | BPP AT VARIOUS LOCATIONS CMR SWY; VARIOUS LOCATIONS CMR SWY | $168,404 |
| 2682992 | P-9000-213-0068-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS CMR SPL, TX | BPP AT VARIOUS LOCATIONS CMR SPL; VARIOUS LOCATIONS CMR SPL | $211,869 |
| 2683003 | P-9000-213-0079-1 | P | CELLCO PARTNERSHIP | 1280911 | VARIOUS LOCATIONS SMC GCN JCN, TX | BPP AT VARIOUS LOCATIONS SMC GCN JCN; VARIOUS LOCATIONS SMC GCN JCN | $274,409 |

13. Further, in other recent actions, Verizon has either admitted or not contested that this federal judicial district is a proper venue for patent infringement actions against it. *See*, *e.g.*, *Pegasus Wireless Innovation LLC v. Verizon Commc'ns, Inc., et al.*, No. 2:25-cv-00288, Dkt. 31 (E.D. Tex. May 29, 2025); *Sol IP v. Verizon Commc'ns Inc., et al.*, No. 2:18-cv-00526, Dkt. 63 (E.D. Tex. Sept. 18, 2019); *Cellular Commc'ns Equip., LLC v. Apple Inc., et al.*, No. 6:17-cv-00146, Dkt. 44 (E.D. Tex. June 29, 2017); *Traxcell Techs., LLC v. Verizon Commc'ns, Inc., et al.*, No. 2:17-cv-721, Dkt. 8 (E.D. Tex. Jan. 22, 2018). Defendant Cellco Partnership has also admitted or declined to contest that it has transacted business in this district. *See*, *e.g.*, *Sol IP*, No. 2:18-cv-00525, Dkt. 63, ¶ 14; *Cellular Commc'ns*, Dkt. 44, ¶¶ 6, 16; *Plectrum LLC v. Verizon Commc'ns Inc., et al.*, No. 4:17-cv-00126, Dkt. 21, ¶ 7 (E.D. Tex. Apr. 19, 2017).

14. Relative to patent infringement, Verizon has committed and continues to commit acts in violation of 35 U.S.C. § 271, including using, and inducing others to use, infringing products, systems, and/or services in this State, including this District, and otherwise engaging in

infringing conduct within and directed at, or from, this District. Such products, systems, and/or services (collectively, the "Accused Instrumentalities") include Verizon mobile devices, the Verizon wireless network infrastructure (including, for example, the IMS Core, the Evolved Packet Data Gateway (ePDG), carrier configurations, SIP signaling parameters, and session management software), and any products or service provided or used by Verizon that supports, incorporates, or implements Wi-Fi Calling, and/or any other similar functionalities that include handover capabilities between Wi-Fi and cellular networks. The Accused Instrumentalities also include Verizon's ZTNA/Mobile VPN products and services, including, for example, Verizon Zero Trust Dynamic Access (on information and belief, powered by iboss), Verizon Secure Gateway Services, Verizon Mobile Private Network, and Verizon Private IP. The Accused Instrumentalities have been, and continue to be, used in this District and distributed to and throughout this District at least in connection with Verizon's network infrastructure, mobile device offerings, retail stores, and website.

15. Verizon's infringing activities have caused harm to Sectra in this District. Verizon and/or its partners provide and/or distribute the Accused Instrumentalities within this District, and, on information and belief, Verizon, its partners, and/or their customers use the Accused Instrumentalities in this District in an infringing manner. For example, Verizon provides, operates, configures, and exerts control over the Accused Instrumentalities, including Verizon's wireless and core network infrastructure and Wi-Fi Calling functionality, to enable customers in this District to establish and maintain secure, persistent, and authenticated network sessions that can migrate between Wi-Fi and cellular networks. Verizon facilitates such sessions through its operation of its cellular and wireless network infrastructure and its provision of the Accused Instrumentalities and associated services to customers in this District. These are purposeful acts

and transactions in this State and this District such that Verizon reasonably should know and expect that it could be haled into this Court.

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Verizon has regular and established places of business in this District. Venue is further proper in this District because Verizon has directly infringed and/or induced the infringement of others, including its partners and/or customers, in this District. As set out above, Verizon has at least distributed the Accused Instrumentalities in this District and has used the Accused Instrumentalities in an infringing manner in this District. And Verizon's customers and end-users have used and continue to use the Accused Instrumentalities in an infringing manner in this District. These infringements by Verizon's customers and end users were, and continue to be, induced by Verizon (as set out further below).

## BACKGROUND

17. Sectra's flagship line of products is its "Tiger" ecosystem, or "Tiger Telephones." These products feature top-level encryption capable of withstanding eavesdropping and hacking attempts, allowing government defense agencies, for instance, to freely transmit classified information. In or around 2010, the Tiger Telephone faced a number of technical issues related to session persistence and network handover, and the future of the product line was uncertain. During this time, Sectra became aware of Columbitech AB's patented technology that enables handovers between heterogenous communication networks (i.e., the '437 patent). Ultimately, Sectra licensed the asserted patent from Columbitech and incorporated the technology into its offerings, saving the entire Tiger ecosystem. Today, the Tiger Telephone is used by the Dutch Ministries, Norwegian Armed Forces, Swedish Defense, NATO, and the Council of European Union.

18. Sectra acquired Columbitech and all of its assets in early 2019, including all rights, title, and interest in the ’437 patent. Sectra is the exclusive owner of all rights, title, and interest in the ’437 patent and has the right to bring this suit to recover damages for any future, current, or past infringements.

**THE PATENT-IN-SUIT**

19. The ’437 patent is entitled, “Method for Handover Between Heterogeneous Communications Networks.” The ’437 patent lawfully issued on September 14, 2010 and stems from U.S. Patent Application No. 10/432,547, filed on November 3, 2003, which, in turn, stems from PCT Application No. PCT/SE01/02612, filed on November 26, 2001. A copy of the ’437 patent is attached hereto as Exhibit 1. The inventors of the ’437 patent are Torbjorn Hovmark and Lars Resenius. The patent was originally assigned to Columbitech AB.

20. The claims of the ’437 patent are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional. The claims of the ’437 patent are directed to specific technological advancements in methods for maintaining communication between devices when switching between heterogeneous communications networks with different network characteristics.

21. The specification of the ’437 patent discloses shortcomings in the prior art and then explains, in detail, the technical way the claimed inventions resolve or overcome those shortcomings. For example, the ’437 patent explains that problems arise with data communications when a first device (e.g., a mobile phone) becomes geographically mobile. ’437 patent, 1:65-67. The ’437 patent notes that communication “locks to the use of the communications technology

afforded by the communications network" (e.g., cellular or Wi-Fi). *Id.* at 2:2-5. Additionally, the software used in the mobile device is not always adapted to account for the fact that the unit is mobile (versus being stationary with a fixed, wired connection to the Internet). *Id.* at 2:6-7.

22. The '437 patent explains that when the first unit is mobile, it will have a plurality of communications links, each having its own IP address. If the first unit moves and the first link becomes unavailable, then the second unit must use the other communications link; otherwise, communications will fail. In the prior art, the second unit would do this by addressing the packets to the second IP address of the first unit. The '437 patent elucidates the issue with such an approach: "[I]t is problematic for the second unit to be aware that the first unit has switched to communications links and to know the new IP address that shall now be used." *Id.* at 2:12-26.

23. Stated more simply, when the first unit (e.g., an iPhone running a text messaging app) switches its IP connection from Wi-Fi to cellular (e.g., because the Wi-Fi network is out of range), the remote server (e.g., text messaging server) is not aware the switch occurred, so it does not know to start communicating to the new IP address associated with the first unit (e.g., iPhone's cellular Internet connection). That means the remote server will keep sending messages (e.g., text messages intended for the iPhone) to an IP address that no longer works (e.g., the Wi-Fi address of the iPhone). Worse, even if the remote server knew the switch occurred, it would not know how to address packets (e.g., packets containing text messages) to the first unit (e.g., iPhone) using the new cellular IP address of the first unit because the server would not know the IP address currently being used.

24. In addition to the IP address issues, the '437 patent teaches that when the TCP protocol is used on top of the IP protocol, and a handover to a network with different characteristics (e.g., different bandwidth or round-trip times) occurs, it is "difficult for the TCP to update its

estimate of the mean round-trip time and the standard deviation thereof" and "it may take a long time for the TCP protocol to adapt to the characteristic of the second network." *Id.* at 2:27-37. This leads to "[m]any unnecessary retransmissions or unnecessarily prolonged time-outs." *Id.*

25. The '437 patent also notes that a switching of the network communication link can cause problems with security. For example, security is usually coupled to the communications link. If the communications link changes, the IP address changes, and the security mechanisms for the new communications link can cause communications to be denied. The '437 patent thus teaches that re-authentication over the new link would be required in prior art systems. *Id.* at 2:38-45.

26. Having identified numerous difficulties resulting from the mobile device switching from one communications link to another, the '437 patent points out that various attempts have been made to allow handovers and discusses the shortcomings of each methodology. *Id.* at 2:51-4:21. For example, the specification explains that Mobile-IP resolved some IP-address-related problems but did not solve the TCP protocol problem and, moreover, resulted in poorer performance due to additional data being added to each IP packet and delaying communication. *Id.* at 3:20-42. As another example, the patent explains that IPSec, while often used with Mobile-IP to solve security problems, also requires the transmission of extra data with each IP packet, resulting in considerably impaired performance. *Id.* at 3:43-58. Other prior art solutions involved changes to the TCP protocol, which would require changes to the TCP standard that would take a very long time to implement in existing computer systems. *Id.* at 4:1-10.

27. To solve these technical problems, the '437 patent claims a specific technical solution involving a method in which a first unit includes a first session layer, a first protocol stack, one or more communications hardware, and one or more drive routines belonging to said first communications hardware; and in which a second unit includes a second session layer, a second

protocol stack, and one or more second communications hardware. *Id*. at 13:42-14:26. According to the '437 patent, the first and second session layers can ensure that "traffic belonging to respective sockets in each of the first software components is corresponded by traffic intended for the second software components and belonging to a unique socket in one of the second software components, and vice versa." *Id*. at 5:1-6. When the first unit switches from communications networks, the first session layer maintains communication via a selection of appropriate hardware and drive routines. *Id*. at 5:7-26. The first and second session layers maintain a first identity for the second unit and a second identity for the first unit, wherein these identities are not changed when switching between communication networks. *Id*. at 6:5-13.

28. Such a technical solution is embodied, for example, in claim 1 of the '437 patent:

A method of maintaining communication between a first unit and a second unit,

wherein said ***first unit is comprised of a geographically mobile unit*** and includes a ***first protocol stack*** adapted to act between a first communications hardware used for communication via a first communications network and one or more first software components, and

wherein said ***second unit*** includes ***a second protocol stack*** adapted to act between a second communications hardware used for communication via a second communications network and one or more second software components,

the method comprising the steps of:

***providing said first unit with a first session layer which is adapted to act as an interface between said first protocol stack and said first software components***;

***providing said second unit with a second session layer which is adapted to act as an interface between said second protocol stack and said second software components***;

causing said ***first session layer to indicate a first identity corresponding to said second unit and said second software components***;

causing said ***second session layer to indicate a second identity corresponding to said first unit and said first software components***;

***causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets***;

***providing said first unit*** with one or more first communications hardware ***with associated drive routines adapted to different communications networks***;

***in the event of said first unit switching from said first communications network to a third communications network, causing said first session layer to maintain said communication*** between said first unit and said second unit ***by selecting necessary first communications hardware and drive routines for said third communications network***; and

> ***causing said second session layer to retain said second identity during the switching*** of said first unit from said first communications network to said third communications network.

(emphasis added).

29. This solution embodied by the claims of the ’437 patent, including claim 1, provides the numerous technical improvements over the prior art network communications methods/processes discussed above. Thus, the claims of the ’437 patent are directed to specific improvements in computer functionalities and not abstract ideas. The claims of the ’437 patent encompass a technology-based solution to problems unique to network communications and are therefore patent eligible.

**<u>VERIZON’S KNOWLEDGE</u>**

30. On information and belief, Verizon has known of the ’437 patent since at least January 4, 2013, when the President of Columbitech, Tobias Englund, sent Verizon personnel (including Steven Archer and Sambit Bastia) a written overview of Columbitech’s business and technology which expressly identified the ’437 patent and indicated that it covers technologies related to “session persistence” and “network roaming.” Mr. Englund prepared the written overview following an in-person meeting with Steven Archer and Sambit Bastia on December 18, 2012. On January 14, 2013, Mr. Englund sent Steven Archer and Sambit Bastia a more detailed version of the written overview of Columbitech’s business and technology which again identified the ’437 patent and described Columbitech’s “Secure Seamless Network Roaming with Application Recovery” technology and a potential integration with Verizon’s Universal Identity Services platform. On information and belief, Steven Archer and Sambit Bastia shared these materials with other Verizon personnel and executives.

31. Verizon's familiarity with technology covered by the '437 patent dates back even further. On or around June 7, 2006, Columbitech prepared a written Business Value Proposition addressed to Jim Straight of Verizon Wireless describing Columbitech's session resume, session persistence, seamless network roaming, and transaction recovery technologies. On information and belief, Verizon received that proposal. Verizon's familiarity with these technologies deepened over the years as the companies continued to collaborate. For example, on information and belief, Verizon prepared a Product Evaluation Report in July 2010 documenting its testing of Columbitech's session persistence and network roaming technologies. These interactions demonstrate Verizon's longstanding familiarity with Columbitech's session persistence and network roaming technologies since at least 2006.

32. In addition, and at minimum, Verizon has been aware of the '437 patent since being served with this Complaint.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,797,437

33. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

34. Sectra is the owner of the '437 patent with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past, present, and future infringements.

35. The '437 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

***Direct Infringement (35 U.S.C. § 271(a))***

36. Verizon has directly infringed, and continues to directly infringe, one or more claims of the '437 patent in this District and elsewhere in Texas and the United States.

37. To this end, Verizon has infringed and continues to infringe, either by itself or via an agent, at least claims 1-21 of the ’437 patent by, among other things, using the Accused Instrumentalities in ways that practice such claims.

38. For example, Verizon uses the Accused Instrumentalities in infringing ways as detailed in Exhibit 2. Verizon uses the Accused Instrumentalities for itself and also deploys the Accused Instrumentalities to establish and manage secure, persistent, and authenticated network sessions—that can migrate between Wi-Fi and cellular networks—for its customers, partners and end users.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

39. In addition and/or in the alternative to its direct infringements, Verizon has indirectly infringed and continues to indirectly infringe one or more claims of the ’437 patent by knowingly and intentionally inducing direct infringement by its customers, partners, and end users.

40. On information and belief, Verizon has had knowledge of the ’437 patent and its infringements since at least January 4, 2013 (*see* ⁋ 30, supra). At a minimum, Verizon has had knowledge of the ’437 patent and its infringements since being served with this Complaint.

41. Despite having knowledge of the ’437 patent and its scope, Verizon has specifically intended, and continues to specifically intend, for persons (such as Verizon’s customers, partners, and end users) to use the Accused Instrumentalities in ways that infringe the ’437 patent, including at least claims 1-21. Verizon knew or should have known that its actions have induced, and continue to induce, such infringements.

42. Verizon provides the Accused Instrumentalities to its customers:[10]







[10] https://www.verizon.com/plans/unlimited/ (last accessed October 12, 2026); https://www.verizon.com/phone-home-internet-bundle/verizon-one/ (last accessed October 12, 2026); https://www.verizon.com/coverage-map/ (last accessed October 12, 2026); https://www.verizon.com/business/en-en/products/security/network-cloud-security/zero-trust-dynamic-access/ (last accessed October 12, 2026); https://www.verizon.com/business/products/networks/managed-network-services/secure-gateway/ (last accessed October 12, 2026); https://www.verizon.com/business/products/networks/connectivity/mobile-private-network (last accessed October 12, 2026);


verizon
Mobile
Home
Save
Search Verizon
Sign in
Find Home Internet and Cell Phone Coverage In Your Area
Explore all Verizon has to offer on internet (including Fios and 5G Home) and cell phone coverage (5G Ultra Wideband, 5G, 4G LTE, Satellite SMS, and more)
Personal
Business
7940 PRESTON RD, PLANO, TX, 75024, USA
Oak Shores Dr
ZOOM 14.6
Cape Charles Dr
Risinghill Dr
Hawkhurst Dr
Robinson Rd
Belleview Dr
Headquarters Dr
Preston Rd
Dominion Pkwy
Hedgcoxe Rd
Mobile
Home Internet
5G Ultra Wideband
4G LTE / 5G
Learn more about Mobile plans
mapbox
Disclaimer
Improve this map
© Maxar
5G Ultra Wideband
5G
4G LTE
Satellite SMS
International
No coverage


verizon business
Products
Solutions
Resources
Contact Us
Why Verizon
Log In
Search Verizon
Home / Business Products and Services / Security / Network Cloud Security / Zero Trust Dynamic Access
Contact sales
Zero Trust Dynamic Access
The first and last line of defense against cyberthreats—all in an innovative cloud-based solution.


verizon business
Mobile
Internet
Solutions
Insights
Log In
Search Verizon
Home / Business Products and Services / Networking Solutions & Services / Managed Network Services / Secure Gateway
Chat
Call Sales: 888-699-4192
Contact sales
Secure Gateway Services
The security and capacity of a private network with the convenience of public internet.







43. Verizon instructs and encourages its customers, partners, and end users to use the Accused Instrumentalities in ways that infringe the ’437 patent. For example, Verizon’s website includes explicit instructions on how to implement and operate the Accused Instrumentalities in infringing manners:[11]

---

[11] https://www.verizon.com/support/wifi-calling-faqs/ (last accessed October 12, 2026); https://www.verizon.com/articles/wifi-hotspot-service-data-plans/how-to-use-wifi-calling-and-mobile-hotspots/ (last accessed October 12, 2026); https://community.verizon.com/kb/articles/1829968-wi-fi-calling-with-verizon (last accessed October 12, 2026); https://www.verizon.com/business/support/vec/network-management-tools/ (last accessed October 12, 2026); https://www.verizon.com/business/service_guide/reg/Zero_Trust_Dynamic_Access_Product_Description.pdf (last accessed October 12, 2026); https://www.verizon.com/business/search?q=ztda&ES=business&src=smb&source=business&tab=Classic%20Search (last accessed October 12, 2026).

# Wi-Fi Calling at Verizon FAQs

**Make calls over Wi-Fi**

Generated by AI. Verify if needed.

When you're in a place with weak or no cellular network coverage, you may be able to make and receive calls and texts over a Wi-Fi network instead. Learn about the built-in Wi-Fi Calling feature and how it works with your smartphone.

**What is Wi-Fi Calling?** **How much does Wi-Fi Calling cost?**

Suggested questions?

Is this page helpful?

**About** Using Wi-Fi Calling Emergency address Troubleshooting How to

Expand All

What is Wi-Fi Calling?

Does Wi-Fi Calling use the data on my plan?

How much data will a Wi-Fi call use?

Is Wi-Fi Calling available on my smartphone?

How much does Wi-Fi Calling cost?

**What is Wi-Fi calling** | **What is a mobile hotspot** | **How to use** | **Other hotspot options**

Verizon

How to use Wi-Fi calling and mobile hotspots

4 min

Staying connected is easier than ever. When it's available, Wi-Fi is free and simple and lets you access Wi-Fi calling. But what about those times you don't have access to Wi-Fi? That's where mobile hotspots come in. And thanks to Verizon's network, you can connect in more places across the country.

## What is Wi-Fi calling?

Wi-Fi calling is a high-definition voice service that lets you make and receive calls just like normal using a Wi-Fi network. This is a great feature if you're traveling abroad. Here's how to set it up:

- On Android devices, activate HD Voice and set up an address for use in the event of an emergency.
- On iPhones, go to "Settings," then tap "Phone" and then "Wi-Fi Calling." Tap or slide "Wi-Fi Calling On This iPhone," and then tap "Enable."

For full set-up details, click here.

verizon Mobile Home Internet Shop Deals

Community Home Discussions LevelUp Help Ask a question

Hey Guest, search the Verizon community

KNOWLEDGE HUB POPULAR ARTICLES › KNOWLEDGE HUB POPULAR ARTICLES

**Knowledge Hub Popular Articles**

Learn More About Your Verizon Mobile Bill

Verizon Home Device Protect

Activating your eSIM device on a standard monthly plan FAQs

Device Locking FAQs

Learn about pound (#) codes and star (*) codes

How to View Your Data Usage (Call history, Text and Mobile data)

## Wi-Fi Calling with Verizon

By Albrean_VZ Last Updated: Oct 7, 2025

**This article explains the benefits of Wi-Fi Calling at Verizon.**
**Extended Connectivity and Coverage**

- Wi-Fi Calling allows users to make and receive voice calls, texts, and video calls by utilizing a Wi-Fi (wireless internet) connection instead of the cellular network.
- This capability is crucial when a user is in an area with weak or no cellular network coverage.

**Domestic Cost Savings and Data Conservation**

- Domestic calls and texts made over Wi-Fi to numbers within the US don't count against the mobile plan's data allowance because they bypass the cellular network.
- International calls and texts made over Wi-Fi are charged as per your international long distance calling plan. If you don't have one, you're charged pay-as-you-go rates.

**Good to know:** If your wi-fi signal is weak or you leave the range of your wi-fi, your phone will automatically start using your mobile plan instead.

verizon business Mobile Internet Solutions Insights Log In Search Verizon

Home / Support / Online Help / **Network management tools**

# Network management tools

- **VEC Support**
- **Auto Renewal**
- **Access and user admin** +
- **Billing** +
- **Installs and Changes** +
- **Network Management Tools** -
  - Dynamic Network Manager
  - Network Manager
  - Traffic Monitor
- **Product Support** +
- **Inventory, events and alarms** +
- **Profile and Settings** +
- **Troubleshooting** +
- **Voice AI Connectors**

**Dynamic Network Manager** - Get started on Dynamic Network Manager for Internet Dedicated, Private IP, E-Line, E-LAN and Activate service.

**Network Manager** - Sets User Guide settings, Port Protection, reserve a toll-free number, view and manage inbound contact center numbers, learn about the termination inventory screen and more.

**Traffic Monitor** - Gain insight into your calling patterns and traffic volumes, get started on Traffic Reporting and view a list of all the reports available through Traffic Reporting.

## 4 Deployment of Zero Trust Dynamic Access

Zero Trust Dynamic Access will be provisioned by iboss, Verizon's third party vendor. After the customer account is provisioned, a welcome letter will be emailed to the designated customer administrator and if needed, an implementation engineer will provide dedicated technical product expertise to assist the customer with onboarding on the cloud platform:

**Search results for "ztda"**

Discover

**Addressing Browser-Based Security Risks with Zero Trust**

**ZTDA's** design addresses the scalability needs of modern enterprises by enabling secure remote work without the limitations of traditional VPNs. Simplified ...

Discover

**Enterprise Network Security in the Era of Hybrid Work | Verizon Business**

Zero Trust Dynamic Access (**ZTDA**) is a cloud solution based on zero trust architecture principles. **ZTDA** is designed to help defend today's complex and ...

Discover

**Enterprise Digital Transformation Strategy**

What makes a business ready for the future? Is it an efficient operating model? Reliable connectivity? Today's most innovative organizations understand that ...

44. Other exemplary instructions and documentation that explain how to make and use the Accused Instrumentalities in an infringing manner are set out in Exhibit 2.

***Damages***

45. Sectra has been damaged as a result of Verizon's infringing conduct described in this Count. Verizon is, thus, liable to Sectra in an amount that adequately compensates it for Verizon's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46. Despite having knowledge of the '437 patent, and knowledge that it is directly and/or indirectly infringing claims of the '437 patent, Verizon has nevertheless continued its infringing conduct in an egregious manner. On information and belief, Verizon has known of the '437 patent and its scope, yet has continually created, used, and sold the Accused Instrumentalities. At the very least, Verizon has been willfully blind to the '437 patent and its application to the Accused Instrumentalities. For at least these reasons, Verizon's infringing activities have been, and continue to be, willful, wanton, and deliberate in disregard of Sectra's rights with respect to the '437 patent, justifying enhanced damages under 35 U.S.C. § 284.

47. Sectra's claims do not have damages limited by 35 U.S.C. § 287. The patent claims at issue are method claims.

## DEMAND FOR A JURY TRIAL

Sectra demands trial by jury on all issues triable of right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Sectra respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i) Judgment and Order that Verizon has directly and/or indirectly infringed one or more claims of the '437 patent;

(ii) Judgment and Order that Verizon must pay Sectra past, present and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed;

(iii) Judgment and Order that Verizon must pay Sectra reasonable ongoing royalties on a go-forward basis after final judgment;

(iv) Judgment and Order that Verizon's infringement of the '437 patent has been willful and that the Court award treble damages pursuant to 35 U.S.C. § 284;

(v) Judgment and Order that Verizon must pay Sectra pre-judgment and post-judgment interest on damages awarded;

(vi) Judgment and Order that Verizon must pay Sectra's allowable costs;

(vii) Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and order Verizon to pay Sectra's attorneys' fees, accordingly; and

(viii) Such other and further relief as the Court may deem just and proper.

Dated: October 15, 2026

Respectfully submitted,

/s/*Edward R. Nelson III*
Edward R. Nelson III
State Bar No. 00797142
ed@nelbum.com
Brent N. Bumgardner
State Bar No. 00795272
brent@nelbum.com
Christopher G. Granaghan
State Bar No. 24078585
chris@nelbum.com
Carder W. Brooks
State Bar No. 24105536
carder@nelbum.com
Jinming Zhang
Virginia Bar No. 96210
jinming@nelbum.com
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF**
**SECTRA COMMUNICATIONS AB**